

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 26, 2018**

_____
**United States Bankruptcy Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § § | |
| JAMES BANDEL KITE, III, | § § | BANKR. CASE NO. 17-32424-BJH |
| DEBTOR. | § § § | (CHAPTER 7) |
| | § | |
| MC OAKHILL, LLC, | § § | ADV. PROC. NO. 18-03010 |
| PLAINTIFF, | § § | Related to ECF No. 1 |
| v. | § § | |
| JAMES BANDEL KITE, III, | § § § | |
| DEFENDANT. | § | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff MC Oakhill, LLC ("**MCO**") sued debtor James Bandel Kite, III (the "**Debtor**") to recover damages allegedly non-dischargeable under 11 U.S.C. §§ 523(a)(2) and (a)(6). The court

granted MCO partial summary judgment under § 523(a)(6)[1] (the "**Partial Summary Judgment Order**") on MCO's claim for damages arising from the Debtor's actions that decreased the value of MCO's collateral but reserved for trial all other issues, including the amount of those damages.[2] Afterward MCO abandoned all other claims, as the parties' Joint Pretrial Order[3] reflects, and elected to pursue solely the issue of damages.

The Debtor participated *pro se* at the November 29, 2018 trial. He signed the Joint Pretrial Order but made no additions to the form of order MCO's counsel drafted. Because he also failed to file a pre-trial brief, proposed findings of fact and conclusions of law, or a witness and exhibit list as the local rules require, the court did not permit the Debtor to introduce testimony or documentary evidence, though it gave him an opportunity to cross-examine MCO's trial witnesses.[4]

This memorandum opinion explains the basis for the court's award of $493,443.61 to MCO, to be declared non-dischargeable under 11 U.S.C. § 523(a)(6).

## I. JURISDICTION AND VENUE

The United States District Court for the Northern District of Texas has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334. This court exercises authority over the Debtor's underlying chapter 11 bankruptcy case and this adversary proceeding pursuant to the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc adopted in this district

---

[1] ECF No. 21.

[2] The Partial Summary Judgment Order granted judgment "on the Plaintiff's claim under 11 U.S.C. § 523(a)(6) with respect to the debt owed by the Debtor to MCO under the Credit Agreement and related Note; however, the determination of the amount of such debt is preserved for trial." The court's findings of fact and conclusion of law at the summary judgment hearing reflect that the measure of nondischargeable damages is not the outstanding debt calculated pursuant to the loan documents; rather, it is the decrease in the value of MCO's collateral due to GFP's actions taken at the Debtor's direction. MCO's proposed findings of fact and conclusions of law submitted after entry of the Partial Summary Judgment Order but before trial were consistent with that ruling [ECF No. 14], as was the damage calculation MCO offered at trial.

[3] ECF No. 29.

[4] MCO's exhibits all were admitted into the record without objection, as was all testimony of MCO's witnesses.

on August 3, 1984. *See* 28 U.S.C. §§ 151, 157.

Venue is proper under 28 U.S.C. § 1409 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (I) and (O). The parties were present at trial and proceeded without objection, thus consenting to this court's rendering a final judgment. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (2015).

## II. FACTUAL AND PROCEDURAL HISTORY

The Debtor was the primary owner, operator and manager of Golden Falls Properties ("**GFP**"),[5] which bought, renovated and resold distressed residential properties, for many of which it carried the purchasers' mortgages (the "**Owner Mortgages**").[6]

In the early stages of their relationship, GFP sold participations in those Owner Mortgages to MCO (the "**MCO Participations**").[7] However, in March 2014 MCO began lending GFP funds to acquire and renovate homes for resale.[8] MCO first loaned GFP up to $250,000, which it increased to $500,000 by June 2014.[9] The borrowings increased further and GFP as borrower, MCO as lender, and the Debtor as guarantor in October 2014, memorialized their undertaking in the Amended, Restated and Consolidated Revolving Credit Agreement (as amended, the "**Credit Agreement**"). The Credit Agreement required GFP to grant MCO a first and senior lien on the Owner Mortgages as well as the proceeds of those mortgages and properties should GFP dispose of them.[10] MCO and GFP memorialized their agreement in several documents:

(1)   Amended and Restated Collateral Assignment of Promissory Note and Deed of Trust/Mortgage [MCO Ex. 3] (the "**Collateral Assignment**"), amending and restating the

---

[5] Complaint [ECF No. 1] ¶¶ 6-7; Answer [ECF No. 10] ¶¶ 6-7.
[6] Complaint ¶ 8; Answer ¶ 8.
[7] Complaint ¶ 8; Answer ¶ 8.
[8] Complaint ¶ 11; Answer ¶ 11. MCO offered into evidence no documents relating to the earlier loans except the UCC-1 financing statements. MCO's decision does not change the analysis in this Memorandum Opinion.
[9] Complaint ¶ 12; Answer ¶ 12.
[10] *See* MCO Ex. 5, Credit Agreement § 2.2 ("Use of Proceeds").

MEMORANDUM OPINION                                                                                      3

prior assignment of promissory note and deed of trust/mortgage. This document obligated GFP to assign to MCO any Owner Mortgage and attendant promissory note on houses that GFP had acquired and renovated through use of the advances made under the Credit Agreement;

(2)     Amended and Restated Security Agreement [MCO Ex. 4] (the "**Security Agreement**"), pursuant to which GFP pledged to MCO its accounts, chattel paper, general intangibles and instruments (and related mortgage or security instruments), together with all amounts to become payable to GFP from any of the property it acquired and renovated;[11] and

(3)     Amended, Restated and Consolidated Revolving Note not to exceed $750,000 in favor of MCO [MCO Ex. 6] (the "**Note**").

The Debtor ratified the Credit Agreement as its guarantor and extended his existing continuing guaranties.[12]

The agreements gave MCO three forms of protection. First, if GFP sold a renovated home for cash, it agreed to pay the proceeds to MCO to reduce the outstanding debt on the Note.[13] Next, if GFP itself financed the purchase of a renovated property and took a mortgage to secure the purchase, MCO would obtain a first lien in that Owner Mortgage.[14] Finally, if GFP sold or transferred an Owner Mortgage, it agreed to remit the proceeds to MCO immediately.[15]

GFP failed to repay the October 2014 Note when it came due, but the parties' agreement did not unwind. Instead GFP, MCO and the Debtor agreed to extend the loan's maturity through September 30, 2015.[16] The Debtor then signed an Amended and Restated Guaranty Agreement relating to both the October 2014 note for $750,000 as well as the June 2014 note for $500,000.[17]

---

[11] MCO filed UCC financing statements in Oklahoma and Texas to perfect its security interests in GFP's assets. MCO Exs. 1, 2, 9 and 10.

[12] MCO Ex. 5, Credit Agreement at 16.

[13] *Id* § 5.2 ("Sale of Properties").

[14] *Id.* § 5.6 ("Sale of Borrower Finance Documents"); MCO Ex. 3, Collateral Assignment.

[15] MCO Ex. 5, Credit Agreement § 5.6 ("Sale of Borrower Finance Documents").

[16] MCO Ex. 7, Loan Modification Agreement § 2(a).

[17] MCO Ex. 8, December 27, 2016 Amended and Restated Guaranty Agreement.

MEMORANDUM OPINION                                                                                                                **4**

When GFP again failed to pay by the extended maturity date, MCO agreed to extend it once more to December 31, 2017.[18]

GFP again failed to pay the Note as promised and for reasons that were not made part of the record, MCO decided to give GFP and the Debtor through December 31, 2017 to satisfy its outstanding obligation.[19]

MCO finally ran out of patience when GFP failed to pay by the end of December 2017 and sued GFP and the Debtor in Oklahoma state court. The state court appointed Sam Heigle as GFP's receiver (the "**Receiver**").[20] During his investigation into GFP's financial affairs, the Receiver discovered that GFP not only defaulted on the Note; it also had compromised MCO's collateral position by mortgaging the real properties and selling additional participations in the Owner Mortgages.[21] GFP's actions, taken at the Debtor's direction, effectively subordinated MCO's liens to the mortgages of real estate lender Home Savings & Loan ("**HSL**"). GFP also created additional participation interests to share in distributions from payments on the Owner Mortgages. Those interests also primed MCO's first lien position and further diminished the value of its collateral.

The Receiver also discovered that HSL had started foreclosure proceedings on several homes subject to GFP's Owner Mortgages and was compelled to borrow from MCO an additional $50,000 to arrest the foreclosures and preserve the properties.[22] The Receiver paid $30,000 of the borrowings to HSL for mortgage arrears and an additional $15,000 to reimburse HSL's fees and

---

[18] MCO Ex. 11, Amended Forbearance Agreement § 3.1.

[19] MCO Ex. 11, January 1, 2017 Amended and Restated Forbearance Agreement § 3.1.

[20] MCO Ex. 13, Agreed Order Appointing Receiver.

[21] Audio Tr. 11/29/18 1:14-18 (testimony of Charles Mullen, MCO's sole member and manager).

[22] MCO Ex. 14, Application for Approval of Borrowing and Issuance of a Receiver's Certificate; Order Approving Borrowing and Issuance of a Receivers Bond.

costs associated with the foreclosures. The Receiver is holding about $6,000 of the additional money he borrowed from MCO to protect GFP's assets.[23]

GFP's questionable business practices were accompanied by poor record keeping. Thus, the Receiver was unable to rely on GFP's available business records to prepare a "reliable" balance sheet for GFP before March 31, 2018. He eventually was able to prepare a balance sheet (the "**Balance Sheet**") dated as of March 31, 2018,[24] which the Receiver relied on to prepare a Summary of GFP's Mortgage Investments as of March 31, 2018 (the "**Summary**").[25] The Summary also contained the Receiver's calculation of the damage the HSL mortgages and the third-party participations caused to MCO's collateral, which MCO adopted at trial. The Summary reflected MCO's total damages as $598,012.59, calculated as follows:

| | | |
|---|---|---|
| **Mortgage Loans** | $ | 707,735.15 |
| Less Mortgage Participation Sold | | (274, 797.36) |
| Less Mortgages to [HSL] | | (276,367.02) |
| **Total Mortgage Loans** | $ | **156,570.77** |
| | | |
| **Senior Secured Claims** | | |
| MC Oakhill Line of Credit | $ | 704,583.36 |
| MC Oakhill Receiver Advance | | 50,000.00 |
| **Total Senior Secured Claims** | | **754,583.36** |
| | | |
| **Net Equity in Mortgages** | $ | **(598,012.59)[26]** |

---

[23] Audio Tr. 11/29/18 1:29-31 (testimony of Sam Heigle, Receiver). The $1,000 discrepancy between the amount of the loan ($50,000) and the Receiver's testimony regarding the use of the loan proceeds ($51,000) is not material to this analysis.

[24] The Balance Sheet was admitted into evidence as MCO Ex. 16.

[25] The Summary was admitted into evidence as MCO Ex. 15.

[26] $156,570.77 - $754,583.36 = -$598,012.59.

MEMORANDUM OPINION 6

### III. LEGAL ANALYSIS

#### A. Liquidation of the Damages Claim

The Credit Agreement and the Debtor's guaranty are governed by Oklahoma law.[27] Under Oklahoma law, damages for permanent harm to property are measured by the difference in actual value of the property immediately before and immediately after the damage is sustained. *A. B. C. Const. Co. of Oklahoma v. Thomas*, 1959 OK 231, 652, 347 P.2d 649, 651 (1959) (citing *Mid-Continent Petro, Corp. v. Fisher*, 1938 OK 483, 84 P.2d 22 (1938); *City of Stillwater v. Cundiff*, 1939 OK 118, 87 P.2d 947 (1939); *Oden v. Russell*, 1952 OK 414, 251 P.2d 184 (1952)).

MCO did not offer from its own records any evidence of the value of its collateral on the dates immediately before and after GFP mortgaged its collateral or sold third party participations. Rather, the only reliable available information is that the Receiver prepared as of March 31, 2018. Because GFP's records left the Receiver unable to determine the value of MCO's collateral before March 31, 2018, and GFP and the Debtor did not disclose their actions to MCO, March 31, 2018 is the appropriate date from which to measure MCO's damages.

MCO contends that it suffered nondischargeable damages totaling $598,012.59 based on the calculations reflected in the Receiver's Summary. The Summary reflects, consistent with the Receiver's testimony, that on March 31, 2018 the Owner Mortgages were worth $707,735.15 and MCO was owed $704,583.36.[28] However, the value of the Owner Mortgages was reduced by both the participations GFP sold to third parties ($274,797.36) and the HSL mortgage loans that outranked MCO's position ($276,367.02). Those adjustments result in a net collateral value of $156,570.77. From that sum MCO then subtracts its outstanding loans to GFP ($754,583.36),

---

[27] *See* MCO Ex. 5, Credit Agreement § 7.7; MCO Ex. 8, Amended and Restated Guaranty Agreement § 16.3.

[28] MCO has used $704,583.36 as the basis its damage calculation, even though that sum represents only the unpaid principal on the Note.

leaving a negative net equity of $598,012.59, the damages it contends GFP and the Debtor caused it. But that calculation is incorrect for two reasons.

First, the Receiver valued the third-party participations at $274,797.36.[29] However, the Balance Sheet designated $107,720.77 of that amount as "MC Oakhill Participations."[30] MCO's own participations in Owner Mortgages plainly did not damage its collateral and therefore should not be included in the damage calculation.

Second, the proper measure of damages is the injury GFP's and the Debtor's actions caused MCO rather than the balance due MCO under the Note. As the Fifth Circuit explained in *Friendly Finance Service Mid-City, Inc. v. Modicue*, 926 F.2d 452 (5th Cir. 1991) (per curiam):

> Section 523(a)(6) is based on tort principles rather than contract. It is designed to compensate the injured party for the injury suffered while not allowing the debtor to escape liability for a "willful and malicious" injury by resort to the bankruptcy laws. Thus, the appropriate measure for non-dischargeability under § 523(a)(6) is an amount equal to the injury caused by the debtor rather than any other sum owed by the debtor on a contractual basis.

*Id.* at 453 (internal citations omitted). Thus, MCO's damages properly comprise the decrease in the Owner Mortgages' value due to the senior HSL loans ($276,367.02), *plus* the participations GFP sold to parties other than MCO ($167,076.59), *plus* the $44,000 the Receiver borrowed from MCO and paid HSL to stop it from foreclosing on the properties.[31] These amounts total $493,443.61.

---

[29] MCO Ex. 15, Summary.

[30] MCO Ex. 16, Balance Sheet at 1.

[31] Considering the $1,000 discrepancy between the amount of the subsequent loan ($50,000) and the Receiver's testimony regarding the use of the loan proceeds (which totaled $51,000), the court will err in the Debtor's favor and find that $44,000 of money the Receiver borrowed from MCO was paid to HSL, leaving GFP $6,000. *See* fn. 23, above.

### B.    The Damages are Non-Dischargeable Under 11 U.S.C. § 523(a)(6)

The plaintiff bears the burden of proving the elements by a preponderance of the evidence in a proceeding to determine the dischargeability of a debt under 11 U.S.C. § 523(a). *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992); FED. R. BANKR. P. 4005. "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). The Bankruptcy Code affords relief only to the "honest but unfortunate debtor"; and a debtor may not obtain a discharge of debts incurred through his own wrongful conduct. *Grogan*, 498 U.S. at 286; *Turbo Aleae Invs., Inc. v. Borschow (In re Borschow)*, 467 B.R. 410, 417 (W.D. Tex. 2012).

Section 523(a)(6) precludes the discharge of debt incurred "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). An injury under § 523(a)(6) is willful and malicious where either (1) there is an objective substantial certainty of harm, or (2) there exists a subjective motive to cause harm. *The Ward Family Found. v. Arnette (In re Arnette)*, 454 B.R. 663, 700 (Bankr. N.D. Tex. 2011) (citing *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 604-06 (5th Cir. 1998)). "Injuries covered by section 523(a)(6) are not limited to physical damage or destruction; harm to personal or property rights is also covered by section 523(a)(6)." *Id.* (quoting *Beveridge v. Beveridge (In re Beveridge)*, 416 B.R. 552, 571 (Bankr. N.D. Tex. 2009)). Moreover, a court may infer that a debtor acted with malice, for purposes of § 523(a)(6), if the debtor acts "in a manner which one knows will place the lender at risk, such as converting property in which the lender holds a security interest." *Brook Credit Corp. v. Lobell (In re Lobell)*, 390 B.R. 206, 217 (Bankr. M.D. La. 2008) (citing *Theroux v. HSA Mortgage Co. (In re Theroux)*, 49 F.3d 728, 1995 WL 103342 at *3 (5th Cir.1995) (unpublished)).

MEMORANDUM OPINION                                                                                                                         9

MCO has met this burden by a preponderance of the evidence. By directing GFP to sell additional third-party participations in the Owner Mortgages and incur mortgage debt on the underlying real estate, the Debtor willfully and maliciously took actions that were objectively certain to cause significant decreases in the value of MCO's collateral.

## IV.   CONCLUSION

MCO is entitled to damages totaling $493,443.61, non-dischargeable in accordance with 11 U.S.C. § 523(a)(6). Counsel for MCO shall upload a form of final judgment consistent with this ruling within ten days of the entry of this Memorandum Opinion on the docket.

### # # # END OF MEMORANDUM OPINION # # #